IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:15-CV-00001-RLV

| | |
|---|---|
| ROBIN A. ADKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| | ) |
| NANCY A. BERRYHILL, ACTING | ) |
| COMMISSINER OF SOCIAL SECURITY,[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on cross-motions for summary judgment. (Docs. 9, 14). For the reasons that follow, the Plaintiff's Motion for Summary Judgment (Doc. 9) is **DENIED**, the Defendant's Motion for Summary Judgment (Doc. 14) is **DENIED**, the decision of the Commissioner is **VACATED**, and this matter is **REMANDED** for a new hearing to be held in a manner consistent with this order.

**I.     BACKGROUND**

On March 2, 2011, Plaintiff Robin A. Adkins filed applications for disability insurance benefits and for supplemental security income under Titles II and XVI of the Social Security Act, alleging an inability to work due to a disabling condition commencing on May 24, 2010. (Tr. 17, 75-81). The Commissioner of Social Security ("Commissioner" or "Defendant") initially denied Plaintiff's applications on July 25, 2011 and, upon reconsideration, again denied the applications

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. The Clerk is directed to substitute Nancy A. Berryhill for Carolyn W. Colvin as the Defendant in this matter. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

on December 12, 2011. (Tr. 17, 29-31, 49-50, 57-58). Plaintiff requested a hearing and, on June 14, 2013, appeared before Administrative Law Judge Wendell M. Sims ("ALJ Sims") for said hearing. (Tr. 17, 663-94).

Through a written decision, ALJ Sims concluded that Plaintiff was not disabled. (Tr. 17-28). At Step One, ALJ Sims found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 19). At Step Two, ALJ Sims found that Plaintiff suffered from multiple severe impairments, specifically diabetes mellitus, various respiratory impairments, migraines, mild degenerative disc disease, kidney problems, knee pain, and various mental disorders.[2] *Id*. At Step Three, ALJ Sims first concluded that none of Plaintiff's physical impairments, or a combination thereof, met the Listings in 20 CFR Part 404. (Tr. 19-21). Then ALJ Sims considered the impact Plaintiff's mental impairments had on her activities of daily living, social functioning, and concentration, persistence, and pace, as well as whether Plaintiff's mental impairments manifested in repeated episodes of decompensation. (Tr. 20). As to Plaintiff's activities of daily living and social functioning, ALJ Sims found that Plaintiff only experienced mild restrictions or difficulties. *Id*. As to Plaintiff's concentration, persistence, or pace, ALJ Sims noted Dr. Brantley's conclusion that she had the "ability to concentrate well enough to perform simple repetitive tasks . . . within normal limits" but concluded, without elaboration, that she had "moderate difficulties" in this area. *Id*. Finally, as to episodes of decompensation, ALJ Sims concluded that although Plaintiff experienced one or two episodes of decompensation, no episode was of sufficient duration for the episode to meet the threshold for counting for purposes of the Listings. *Id*. Therefore, with Plaintiff presenting with only moderate difficulties in one area and

---

[2] Although ALJ Sims's Step Two analysis did not specify what mental disorders qualified as severe impairments, his subsequent synopsis of Plaintiff's mental health records, when forming Plaintiff's residual functional capacity, identified diagnoses of mood disorder, generalized anxiety disorder, major depressive disorder, severe bipolar disorder with psychotic features, and possibly attention-deficit hyperactivity disorder. (Tr. 25-26)

2

no episodes of decompensation, ALJ Sims concluded that Plaintiff's mental impairments did not meet the Listings. *Id.*

ALJ Sims then commenced his residual functional capacity assessment by summarizing Plaintiff's hearing testimony and Plaintiff's medical records. (Tr. 20-27). ALJ Sims concluded that Plaintiff's testimony was inconsistent with aspects of her medical records and that Plaintiff was not credible regarding the basis for her termination from her prior job, her daily activities, and the trajectory of her symptoms since May 2010. (Tr. 27). With respect to her physical limitations, ALJ Sims concluded that Plaintiff could perform light work with restrictions for only occasionally climbing ladders and for avoiding concentrated exposure to humidity, extreme heat, fumes, and hazards. (Tr. 21). To address Plaintiff's mental limitations, ALJ Sims included a restriction limiting Plaintiff to "simple, routine, repetitive tasks in a stable environment." (Tr. 21, 26). At Step Four, ALJ Sims relied on his residual functional capacity assessment and on vocational expert testimony to conclude that Plaintiff could return to her previous employment as a cashier, specifically the position of Cashier II found in the Dictionary of Occupational Titles ("DICOT") at § 211.462-010. (Tr. 27-28). Accordingly, ALJ Sims concluded that Plaintiff was not disabled. (Tr. 28).

Plaintiff requested that the Appeals Council review ALJ Sims's adverse decision and presented the Appeals Council with additional evidence, including a "mental residual functional capacity questionnaire" completed by Pamela Hollis, a treating licensed clinical social worker. (Tr. 10, 13, 657-62). The Appeals Council considered Plaintiff's additional evidence but denied Plaintiff's request for review of ALJ Sims's adverse decision. (Tr. 6, 9-10). Plaintiff timely filed this action seeking judicial review of the denial of benefits. In her memorandum in support of her motion for summary judgment, Plaintiff raises four assignments of error with the Commissioner's

final decision denying benefits: (1) ALJ Sims failed to perform a function-by-function analysis relative to Plaintiff's mental impairments and limitations; (2) the physical limitations in the residual functional capacity adopted by ALJ Sims are not supported by substantial evidence; (3) remand is necessary for fact finding on the additional evidence considered by the Appeals Council because the evidence conflicts with ALJ Sims's decision and addresses evidentiary gaps with respect to limitations resulting from Plaintiff's mental impairments; and (4) ALJ Sims failed to ask the vocational expert about an apparent conflict between the expert's testimony and the DICOT, being an apparent conflict between the reasoning level assigned to the occupation of Cashier II in DICOT and the limitation in Plaintiff's residual functional capacity for "simple, routine, repetitive tasks in a stable environment." (Doc 10 at 5-23).

## II. DISCUSSION

### A. Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179

(4th Cir. 1986) (brackets and internal quotation marks omitted). Critically, "[t]he substantial evidence standard 'presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (ellipsis omitted) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, 907 F.2d at 1456. Therefore, the issue before this Court is not whether Adkins *is* disabled, but whether ALJ Sims's conclusion that Adkins is *not* disabled is explained and *supported by substantial evidence* and that such decision was reached based upon a correct application of the relevant law.

B. Analysis

The Court finds Plaintiff's fourth assignment of error–that ALJ Sims erred at Step Four by failing to ask the vocational expert to explain an apparent conflict between the expert's testimony and the DICOT—dispositive as to the relief of remand that Plaintiff seeks in her memorandum in support of her motion for summary judgment. At Step Four of the disability determination, the administrative law judge must determine whether the claimant can return to her past relevant work. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 at *1. To assist with the question of

whether a claimant's residual functional capacity permits her to return to her past relevant work and to address "complex vocational issues," an administrative law judge may rely on the testimony of a vocational expert. *Id.* at 2; *see also Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) ("The ALJ may also use a vocational expert to address complex aspects of the employment determination . . . ." (internal quotation marks omitted)).

A vocational expert's testimony may conflict with the DICOT based on the vocational expert's knowledge of the requirements of a particular job in practice; however, where a conflict, or even an apparent conflict, exists, the administrative law judge must "'elicit a reasonable explanation for' and 'resolve' [any] conflict[] between the expert's testimony and the [DICOT]." *Pearson*, 810 F.3d at 207-08 (quoting SSR 00-4p, 2000 WL 1898704, at *2). If the administrative law judge fails to question the vocational expert about an apparent conflict between the expert's testimony and the DICOT, "the expert's testimony cannot provide substantial evidence to support the administrative law judge's decision." *Id.* at 209. Put another way, "[a]n expert's testimony that apparently conflicts with the [DICOT] can only provide substantial evidence if the ALJ has received [an] explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DICOT]." *Id.* at 209-10 (citing SSR 00-4p, 200 WL 1898704 at *2).

To account for Plaintiff's mental impairments and difficulties with concentration, persistence, and pace, ALJ Sims's included a restriction for "simple, routine, repetitive tasks in a stable environment" in Plaintiff's residual functional capacity. (Tr. 21, 26). Relying on vocational expert testimony, ALJ Sims, however, concluded that Plaintiff could return to her previous employment of Cashier II, DICOT § 211.462-010. (Tr. 27-28). The DICOT description of the position of Cashier II includes an assignment of Reasoning Level 3, which requires the employee

6

to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICOT § 211.462-010.

In addressing whether an apparent conflict exists between a limitation for simple, routine, and repetitive tasks and an occupation, such as Cashier II, that requires Reasoning Level 3, Federal Circuit Courts of Appeals have reached opposing conclusions. *Compare Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (holding that apparent conflict exists), *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (same), *with Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (per curiam) (concluding that no actual or apparent conflict exists). The Eighth Circuit has also weighed in on the conflict, and appears to take a case-by-case, fact intensive approach that recognizes a tension between a restriction for simple, routine tasks and Reasoning Level 3 but rejects the existence of a per se apparent conflict where facts specific to a claim for benefits may otherwise establish the claimant's ability to satisfy the mental functionality corresponding to Reasoning Level 3. *See Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) (noting earlier Eighth Circuit case identifying "tension" but concluding that particular claimant's work history and the lack of subsequent mental deterioration negated any apparent conflict). The United States Court of Appeals for the Fourth Circuit has not weighed in on the issue and a split in the authority exists among district courts within the Fourth Circuit. *See Mullis v. Colvin*, 2014 WL 2257188, at *1 (M.D.N.C. May 29, 2014) (noting lack of Fourth Circuit authority and split amongst district courts in the Circuit before adopting position that apparent conflict exists).

After reviewing the relevant case law and the facts of this case, this Court adopts the position of those courts finding an apparent conflict between a restriction for simple, routine, and repetitive tasks and a claimant's ability to perform an occupation requiring Reasoning Level 3.

First, the analysis in Circuit Court cases holding that an apparent conflict exists is significantly more persuasive. Whereas *Zavalin* and *Hackett* perform a comparative analysis of various reasoning levels comparative to a restriction for simple and routine tasks, *see Zavalin*, 778 F.3d at 846-47; *Hackett*, 395 F.3d at 1176, *Terry* largely sidesteps the issue by finding that any conflict was not made apparent to the administrative law judge because the claimant's representative did not question the vocational expert and that any error by the administrative law judge was harmless because of the claimant's actual mental capabilities, *see Terry*, 580 F.3d at 478.[3] Additionally, because *Terry* vacated the administrative decision on other grounds, *Terry*'s language on the nonexistence of an apparent conflict constitutes dicta and the *Terry* Court's remand for a new hearing effectively permitted the administrate law judge on remand to address any conflict. The persuasive value of the body of cases finding no apparent conflict is further weakened by the fact that the United States Court of Appeals for the Fourth Circuit, subsequent to the Commissioner submitting her memorandum in support of her motion for summary judgment in this case, reversed or vacated the two most recent district court cases that the Commissioner cites for the proposition that no apparent conflict exists between a restriction to simple, routine, and repetitive tasks and Reasoning Level 3. *See Henderson v. Colvin*, 643 F. App'x 273, 276-77 (4th Cir. 2016); *see also Fox v. Colvin*, 2015 WL 1457474 (W.D.N.C. Mar. 30, 2015) (vacated and remanded by order, *Fox v. Colvin*, (4th Cir. Apr. 5, 2016) (No. 15-1565)).[4]

Second, the Court's review of the underlying facts in this case, as identified in ALJ Sims's written decision, favor applying *Zavalin* and *Hackett* to conclude that an apparent conflict exists.

---

[3] In *Pearson*, the Fourth Circuit rejected the proposition that an administrative law judge satisfies his duty to resolve apparent conflicts by asking the vocational expert if her testimony conflicts with the DICOT and that it is beholden on the claimant's representative to flesh out apparent conflicts once the vocational expert answers the administrative law judge's question in the negative. *Pearson*, 810 F.3d at 208-09.

[4] Notably, of the cases cited by the Commissioner, these are the only two cases resolved by the United States Court of Appeals for the Fourth Circuit after its published decision in *Pearson*.

The extent of Plaintiff's possible mental disorders, as evident from the numerous diagnoses identified in ALJ Sims's decision, go well beyond the mere finding of depression in *Terry* and more closely resemble the impairments one might expect could accompany the mental impairments at issue in *Zavalin*. (*See* Tr. 21, 25-26); *see also* Zavalin*,* 778 F.3d at 844 (noting that restriction incorporated in residual functional capacity to address learning disorder and cerebral palsy); *Terry*, 580 F.3d at 472 (identifies depression as only mental impairment from which claimant suffered). As an end product of this distinction, the residual functional capacity restriction adopted by ALJ Sims to address Plaintiff's mental limitations is clearly more restrictive than the limitation to just "simple" tasks in *Terry* and is even arguably more restrictive than the restriction for "only simple, routine, or repetitive work" in Zavalin. (*Compare* Tr. 21, 26 (ALJ Sims adopting restriction for "simple, routine, repetitive tasks *in a stable environment*" (emphasis added), *with Zavalin*, 778 F.3d at 845 (noting that residual functional capacity restriction was for "only simple, routine, or repetitive work"), *Terry*, 580 F.3d at 478 (discussing whether limitation for "only 'simple' work" presented apparent conflict with Reasoning Level 3)). Similarly, here, like in *Hackett*, the residual functional capacity restriction stemmed specifically from limitations with respect to the claimants concentration, persistence, and pace. (*See* Tr. 21, 25-26); *Hackett*, 395 F.3d at 1171.

Third, and finally, no facts identified in ALJ Sims's decision otherwise resolves the apparent conflict. In particular, ALJ Sims conclusion that Plaintiff experiences moderate difficulties with concentration, persistence, or pace is stated in conclusory fashion and without explanation. (Tr. 20). As a result, the Court is unable to connect ALJ Sims's conclusion about Plaintiff experiencing moderate difficulties, which seemingly underlies the restriction for "simple, routine, repetitive tasks in a stable environment," to any facts or inferences about Plaintiff's

9

expected work performance and reasoning ability. Somewhat similarly, ALJ Sims's explanation for why he included the restriction for "simple, routine, repetitive tasks in a stable environment" is abrupt and insufficiently developed to resolve the apparent conflict between the restriction and the Reasoning Level 3 requirement of the occupation of Cashier II. Lastly, the additional evidence Plaintiff submitted to the Appeals Council, if credited, suggests a worsening of Plaintiff's mental condition and the possibility of an actual conflict between Plaintiff's mental limitations and an occupation requiring Reasoning Level 3.[5] *Cf. Hillier*, 486 F.3d at 367 (finding no conflict existed given claimant's past work experience and "the absence of any evidence showing any mental deterioration since [the claimant last worked]").

Accordingly, the Court concludes that remand is necessary to address an apparent conflict between the testimony of the vocational expert and the DICOT. On remand, the administrative law judge shall consider and make findings regarding the additional evidence submitted by Plaintiff to the Appeals Council. Furthermore, because the Court has determined that remand is necessary with respect to Plaintiff's fourth assignment of error, the Court need not address Plaintiff's first two assignments of error. Instead, on remand, the Plaintiff may, make her other arguments to the administrative law judge and the administrative law judge correct any perceived error on his or her own.

### III.  DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1)     Plaintiff's Motion for Summary Judgment (Doc. 9) is **DENIED**;[6]

---

[5] Although ALJ Sims discredited Plaintiff's testimony about her symptoms worsening, ALJ Sims did not have the benefit of Pamela Hollis's evaluation and, as acknowledged by ALJ Sims and by the Commissioner in her memorandum in support of her motion for summary judgment, there were minimal psychiatric treatment notes in the record. (*See* Doc. 15 at 6 (describing the treatment records as "scant"); Tr. 26 (noting that "record does not contain treatment notes from . . . between October 2011 and August 2012)).

[6] Although Plaintiff's memorandum of law in support of her motion for summary judgment seeks only a remand as relief, her motion for summary judgment seeks a "judgment as a matter of law." (*Compare* Doc. 10 at 2, *with* Doc. 9

(2) Defendant's Motion for Summary Judgment (Doc. 14) is **DENIED**; and

(3) The decision of the Commissioner is **VACATED** and this matter is **REMANDED** for a new hearing.

Signed: March 21, 2017

Richard L. Voorhees
United States District Judge

---

at 1). Because this Court does not reverse ALJ Sims's decision by finding that Plaintiff is disabled, Plaintiff's motion for summary judgment, as a matter of procedure, is denied.